IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANGELINE G. MALDONADO,

    Plaintiff,

vs.                                              No. 1:20-CV-01119-KRS

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court upon Plaintiff Angeline G. Maldonado's Motion to Reverse and Remand for a Hearing with Supportive Memorandum (Doc. 18), dated July 6, 2021, challenging the determination of the Commissioner of the Social Security Administration ("SSA") that Maldonado is not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. The Commissioner responded to Maldonado's motion on October 13, 2021 (Doc. 22), and Maldonado filed a reply brief on October 27, 2021 (Doc. 23). With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(b), the Court has considered the parties' filings and has thoroughly reviewed the administrative record. Having done so, the Court concludes that the administrative law judge (ALJ) erred in her decision and will therefore GRANT Maldonado's motion and remand this case back to the SSA for proceedings consistent with this opinion.

**I. Procedural Posture**

On April 24, 2018, Maldonado filed an initial application for disability insurance benefits. (*See* Administrative Record ("AR") at 76). Maldonado alleged that she had become disabled on December 15, 2011, due to Crohn's disease in both intestines, gastritis, irritable

bowel syndrome, osteoarthritis, thyroid issues, high blood pressure, muscle pain and numbness, and rheumatoid arthritis. (*Id.* at 78). Her application was denied at the initial level on October 31, 2018 (*id.* at 76), and at the reconsideration level on March 13, 2019 (*id.* at 93). Maldonado requested a hearing (*see id.* at 109), which ALJ Lillian Richter conducted on January 7, 2020 (see *id.* at 38-75). Maldonado was represented by counsel and testified at the hearing (*id.* at 43-69), as did a vocational expert (*id.* at 69-74). Prior to this hearing, Maldonado amended her alleged onset date to August 2, 2016. (*See id.* at 279).

On April 13, 2020, the ALJ issued her decision finding that Maldonado was not disabled under the relevant sections of the Social Security Act. (*Id.* at 10-22). Maldonado requested that the Appeals Council review the ALJ's decision (*id.* at 168-70), and on September 2, 2020, the Appeals Council denied the request for review (*id.* at 1-3), which made the ALJ's decision the final decision of the Commissioner. On October 30, 2020, Maldonado filed the complaint in this case seeking review of the Commissioner's decision. (Doc. 1).

## II. LEGAL STANDARDS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118; or if it "constitutes mere conclusion," *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted).

### B.  Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. If a finding of disability or non-disability is directed at any point,

the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of his impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that he is able to do despite his limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the claimant must prove that, based on his RFC, he is unable to perform the work he has done in the past. *See Thomas*, 540 U.S. at 25. At the final step, the burden shifts to the Commissioner to determine whether, considering the claimant's vocational factors, he is capable of performing other jobs existing in significant numbers in the national economy. *See id.*; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III. THE ALJ'S DETERMINATION

The ALJ reviewed Maldonado's claim pursuant to the five-step sequential evaluation process. (AR at 11-12). First, the ALJ found that Maldonado last met the insured status requirement on December 31, 2017, and had not engaged in substantial gainful activity between her alleged onset date and her date last insured. (*See id.* at 12). The ALJ then found at step two that Maldonado suffered from the following severe impairments: osteoarthritis of the left ankle, chronic sciatica, obesity, lumbar discogenic pain, and myofascial pain. (*See id.*). The ALJ also found that Maldonado's ileo-colonic Crohn's disease, Vitamin B12 and D deficiency, and hypothyroidism constituted nonsevere impairments, and she found that other conditions amounted to non-medically determinable impairments. (*See id.* at 13-14). At step three, the ALJ concluded that Maldonado did not have an impairment or combination of impairments that met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*See id.* at 14-15).

4

Proceeding to the next step, the ALJ reviewed the evidence of record, including medical opinions and evidence from treating and examining providers, prior administrative medical findings, and statements from Maldonado's family members. (*See id.* at 17-20). The ALJ also referenced Maldonado's own subjective symptom evidence, though her discussion of that evidence was abbreviated and did not expressly describe Maldonado's subjective symptom allegations in detail. (*See id.* at 16-17). Having reviewed these matters, the ALJ concluded that Maldonado possessed an RFC to perform light work with certain exertional and nonexertional modifications. (*See id.* at 15). Based on this RFC, the ALJ found that Maldonado was unable to perform any past relevant work. (*See id.* at 20).

Moving to step five, the ALJ determined that Maldonado was able to perform other jobs existing in significant numbers in the national economy during the relevant period. (*See id.* at 21-22). The ALJ therefore concluded that Maldonado's work was not precluded by her RFC from her alleged onset date through her date last insured and that she was not disabled during that time. (*See id.* at 22).

## IV.  DISCUSSION

Maldonado challenges the ALJ's evaluation of her subjective symptom evidence (*see* Doc. 18 at 5-11), the ALJ's determination that some of her conditions were not medically determinable impairments (*see id.* at 11-13), and the ALJ's assessment of opinion evidence provided by two treating medical providers (*see id.* at 14-27). Because the Court concludes that the ALJ erred in her evaluation of Maldonado's subjective symptom allegations, the Court does not reach Maldonado's additional claims of error. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

An ALJ's subjective symptom evaluations "warrant particular deference." *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002).[1] Still, such "deference is not an absolute rule." *See Kellams v. Berryhill*, 696 F. App'x 909, 917 (10th Cir. 2017) (unpublished)[2] (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993)). In evaluating a claimant's subjective symptom evidence and other matters, an ALJ must discuss not only "the evidence supporting his decision," but also "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Along these lines, "[i]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quotation omitted). Likewise, an ALJ is not permitted to "mischaracterize or downplay evidence to support her findings." *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (unpublished) (citing *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987)). Failure to follow these controlling legal standards is grounds for remand. *See, e.g.*, *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

The assessment of subjective symptom evidence is a two-step process, requiring the ALJ to first determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce his alleged symptoms. *See* Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *3 (Mar. 16, 2016).[3] If she so determines, the ALJ must then evaluate

---

[1] In 2016, SSA eliminated the use of the term "credibility" when describing a claimant's testimony to "clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029, at *1 (superseding SS 96-7p). Older authorities that addressed a claimant's "credibility," *see, e.g.*, *White*, 287 F.3d at 910, are therefore construed as referring to an individual's subjective symptom evidence.

[2] The Court cites *Kellams*, other unpublished decisions of the Tenth Circuit, and the district court decisions referenced in this opinion for their persuasive value unless otherwise stated.

[3] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; see also *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

the intensity and persistence of the claimant's symptoms and determine the extent to which his symptoms limit his ability to perform work-related activities. *See id.* at *4. At this stage, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*; *see also id.* at *4-7 (elaborating on factors to consider); 20 C.F.R. § 404.1529(c) (same).

      Maldonado alleges error at the second step of this analysis, asserting that the ALJ failed to adequately address her subjective allegations of symptoms arising from her Crohn's disease and other gastrointestinal conditions.[4] The Court agrees. Although Maldonado testified extensively as to the intensity, persistence, and limiting effects of symptoms allegedly arising from her impairments, the ALJ generally failed to directly discuss these matters despite her obligation to consider them. *See* SSR 16-3p, 2017 WL 5180304, at *6. On the contrary, while the ALJ acknowledged some of Maldonado's testimony that limitations *exist* as a result of certain symptoms arising from her gastrointestinal impairments and other conditions, she almost entirely failed to describe those symptoms, their alleged intensity and persistence, or the extent of the limitations that allegedly result from them. (*Cf.* AR at 16) (noting Maldonado's allegation that "her conditions affect" certain functioning, but failing to describe the symptoms allegedly

---

[4] Though Maldonado also cites the relevant test in terms of the three-step framework for addressing pain and other subjective symptoms discussed in *Luna v. Bowen*, 834 F.2d 161 (1987) (*see* Doc. 18 at 10), persuasive decisions have recognized that the *Luna* framework "is equivalent to the two-step process prescribed by the SSA for evaluating a claimant's statements about her pain and other symptoms." *See, e.g.*, *Chavira v. Kijakazi*, No. 20-cv-00563 GBW, 2022 WL 92781, at *3 (D.N.M. Jan. 10, 2022); *see also, e.g.*, *Brownrigg v. Berryhill*, 688 F. App'x 542, 546 (10th Cir. 2017) (unpublished) (noting that *Luna* analysis is consistent with SSA interpretation of agency regulations). In particular, the final steps of both the *Luna* analysis and the SSR 16-3p framework are effectively the same. *See Chavira*, 2022 WL 92781, at *4 (considering "*Luna* step three (agency step two)").

attributable to those conditions, their alleged intensity or persistence, or the purported degree of limitation in each ability).

For example, Maldonado testified that her gastrointestinal impairments have sometimes limited her to eating one meal a day, particularly when she was working or otherwise had plans to leave the home, as otherwise she could get sick and/or have "accidents" if she were unable to reach a restroom in time. (*See* AR at 48-49). She further attested to difficulty concentrating on work, including simple tasks, due to constant concerns that eating would make her sick or that she would need to make lengthy trips to the restroom. (*See id.* at 51). Maldonado also directly related these circumstances to the period prior to her date last insured, noting that she might have to go to the restroom "for long periods of time" if she ate any food during work hours (*see id.* at 64) and that she was missing "two to three days a month" at work due to her symptoms before she stopped working altogether (*see id.* at 50). Additionally, Maldonado testified that her initial prescription medication for Crohn's disease failed to adequately control her symptoms and that her second prescription regimen eventually lessened in efficacy (*see id.* at 47-48), allegations which appear to be borne out by the medical record (*see, e.g.*, *id.* at 353-54) (noting medication switch in January 2017 due to unalleviated symptoms); (*id.* at 376) (recording continued elevated fecal calprotectin in October 2017); (*see also id.* at 554-55) (noting continued symptoms and elevated inflammatory markers and increasing in medication frequency in June 2018); (*id.* at 944-45, 951) (prescribing new medication in October 2019 due to increased inflammation and daily symptoms).

Despite this testimony, the ALJ only referenced Maldonado's allegations of symptoms arising from her gastrointestinal impairments in a cursory, undetailed fashion. (*See id.* at 16) (referring broadly to unspecified "subjective complaints" and "worse[ning]" symptoms, to

8

unspecified allegations of "disabling symptoms and limitations," and to alleged limitations of an unspecified degree affected by "her conditions"). In particular, the ALJ omitted any discussion of Maldonado's testimony concerning her frequency and length of restroom usage resulting from her gastrointestinal impairments, the urgency of these symptoms, her absences from work due to these symptoms, and the relevant course of her medication and other treatment measures to address these symptoms. Each of these are matters that an ALJ must consider when addressing a patient's subjective allegations of symptoms. *See, e.g.*, SSR 16-3p, 2017 WL 5180304, at *6-7; *see also, e.g.*, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (quotation omitted) (holding that ALJ evaluating subjective symptom allegations should consider, among other things, "a claimant's persistent attempts to find relief" and "the dosage, effectiveness, and side effects of medication"). The ALJ's failure to discuss these subjective symptom allegations leaves the Court to guess as to whether she properly considered them.

Without disputing Maldonado's argument that the ALJ did not expressly address certain symptoms allegedly associated with her gastrointestinal impairments, the Commissioner asserts that the ALJ's omissions did not amount to legal error because she was "not required to go factor-by-factor through the evidence" when assessing a claimant's subjective symptom allegations. (*See* Doc. 22 at 10) (citing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). While this principle is correct in a general sense, an ALJ is required to discuss "the uncontroverted evidence [s]he chooses not to rely upon" and "significantly probative evidence [s]he rejects." *See Clifton*, 79 F.3d at 1010. Moreover, an ALJ must "set[] forth the specific evidence [s]he relies on in evaluating the claimant's [subjective symptom evidence]." *Keyes-Zachary*, 695 F.3d at 1167. Maldonado's allegations as to her frequency of restroom usage throughout the day, the degree to which this frequent restroom usage interrupted her ability to

9

perform work, and the efficacy of her medications are arguably uncontroverted and find facial support in the objective medical record dating to the relevant period. (*See, e.g.*, AR at 325) (noting diarrhea and/or loose to watery bowel movements, with occasional blood and abdominal cramping lasting for a "few hours," occurring 3-4 times daily as of August 2016).[5] And while certain of Maldonado's allegations of subjective symptoms might reasonably be construed as running counter to the objective medical record (*see, e.g.*, *id.* at 370) (noting "no blood" and "no urgency" despite frequent loose bowel movements as of September 2017), this would only highlight the need for the ALJ to discuss those allegations before explaining why she rejects them. *See Clifton*, 79 F.3d at 1010.[6] The ALJ's blanket statement that "the claimant's subjective complaints exceed the clinical examination findings," with no further elaboration as to which subjective complaints exceeded which clinical findings (*see id.* at 16), does not satisfy this standard under the circumstances.

Although the Commissioner cites *Kepler* in support of her position, that decision in fact counsels in favor of a contrary conclusion. In that case, as in this one, the ALJ addressed certain objective medical findings that he determined were inconsistent with the claimant's subjective symptom allegations, but he described those allegations themselves "in conclusory fashion." *See*

---

[5] The ALJ came closest to assessing Maldonado's testimony as to urgency and frequency of restroom usage when evaluating statements from Maldonado's daughter, which included an assertion that Maldonado "had to use the restroom several times a day." (*See* AR at 19). The ALJ sweepingly concluded that the statements from Maldonado's daughter "are not consistent with the medical evidence during the relevant period." (*See id.*). But even if this could be construed as addressing Maldonado's more detailed testimony on the subject, the basis for the ALJ's determination is unclear given the undisputed medical evidence recording at least "2-3 . . . loose bowel movements per day" as of September 2017 (*see, e.g., id.* at 370) and greater frequency, urgency, and intensity at other times during the relevant period (*see, e.g.*, *id.* at 325) (August 2016).

[6] The Court also notes, without deciding the issue, that the failure to discuss these subjective symptom allegations may amount to shortcomings at other stages of the ALJ's decision. For instance, the ALJ found the medical opinions of Maldonado's treating gastroenterologist to be unpersuasive because those opinions were purportedly "inconsistent with the medical evidence," including treatment notes "demonstrat[ing] that the claimant's gastrointestinal issues were well controlled." (AR at 20). Yet, the gastroenterologist's opinions appear to be facially consistent with Maldonado's testimony concerning the intensity and persistence of the symptoms associated with her gastrointestinal impairments during the relevant time. Despite the ALJ's apparent rejection of Maldonado's testimony as to these systems, she does not discuss that testimony except in the broad terms addressed above.

*Kepler*, 68 F.3d at 390-91. The Tenth Circuit held that the cursory treatment of the claimant's subjective allegations left the court "to speculate what specific evidence led the ALJ to find [the] claimant's pain was not disabling," a troubling outcome given that certain record evidence "could be viewed as supporting [the] claimant's contention." *See id.* at 391. As the court held, an ALJ's "[f]indings as to [subjective symptom evidence] should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings," and a finding that omits "the link between the evidence and [subjective symptom] determination" fails to satisfy this standard. *See id.* at (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)). The Tenth Circuit's reasoning in *Kepler* applies with the same force here.

The Commissioner also suggests that the ALJ's explicit consideration of other subjective symptom allegations, provided by Maldonado in function reports and in statements to her providers, satisfied the ALJ's obligation to discuss Maldonado's subjective symptom evidence. (*See* Doc. 22 at 10). Notably, however, the particular subjective symptom statements discussed by the ALJ and highlighted by the Commissioner tend to support a finding of nondisability. (*See id.*) (citing, *e.g.*, AR at 16-17) (referencing ALJ's discussion of, *inter alia*, Maldonado's statement to a provider that she "was able to get 'some mobility and exercise done'" in June 2016, her reports of having "no issues with" performing specific activities of daily living, and her statement to a provider that she had gone camping following onset of symptoms). By contrast, the subjective symptom evidence that went undiscussed by the ALJ appears to provide some support for Maldonado's allegations of disability. (*See, e.g.*, *id.* at 49-51) (testimony as to gastrointestinal symptoms). It is well established that an ALJ may not "pick and choose" from the record, "using portions of evidence favorable to his position while ignoring other evidence."

11

*See Carpenter*, 537 F.3d at 1265. If anything, the selective discussion of Maldonado's subjective symptom evidence only emphasizes the ALJ's error.

Finally, the Commissioner cites the Tenth Circuit's decision in *Suttles v. Colvin*, 543 F. App'x 824 (10th Cir. 2013) (unpublished), as standing for the proposition that "the ALJ's summary of the objective medical evidence" was adequate. (*See* Doc. 22 at 11). This contention misunderstands the nature of the ALJ's error: the problem here is not the sufficiency of the ALJ's summary of objective evidence in support of her findings, but her failure to show that she adequately considered *all* of the relevant evidence pertaining to Maldonado's subjective symptom allegations—*including the allegations themselves*—before reaching a conclusion as to the intensity, persistence, and limiting effects of those symptoms. In any event, *Suttles* is unpublished, does not address an ALJ's consideration of subjective symptom evidence, and is not persuasive as to that issue.

On remand, the ALJ should make clear her consideration of the relevant factors outlined in SSR 16-3p and in controlling Tenth Circuit decisions, including Maldonado's own statements concerning "the frequency and duration of the symptoms, . . . the impact of the symptoms on the ability to perform daily living activities[,] . . . activities that precipitate or aggravate the symptoms, medications and treatments used, and other methods used to alleviate the symptoms." *See* SSR 16-3p, 2017 WL 5180304, at *6. To the extent that the ALJ continues to find that the record is inconsistent with Maldonado's statements concerning the intensity, persistence, and limiting effects of her symptoms, she should explain why this is the case, making sure to "closely and affirmatively link[]" her determination to substantial evidence of record. *Kepler*, 68 F.3d at 391.

## V. CONCLUSION

The ALJ erred in her review of Maldonado's application for disability insurance benefits by failing to properly evaluate Maldonado's subjective symptom evidence pursuant to controlling legal standards. Accordingly, Maldonado's Motion to Reverse and Remand for a Rehearing (Doc. 18) is **GRANTED**, and the Court remands this case back to the SSA for proceedings consistent with this opinion.

_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**